We have two cases for argument scheduled for today. The first one is 13-7085 Miller v. Shinseki. Is counsel ready? Yes sir. You may proceed. Good morning. May it please the court. The Board of Veterans Appeals erred when it denied Mr. Miller's motion for reconsideration for his TDIU claim for chronic otitis media. TDIU stands for Total Disability Individual Unemployment. The reason Mr. Miller filed this motion for reconsideration is because the board had decided that Mr. Miller was qualified for the maximum schedule rating for chronic otitis media, which is a severe inflammation of the middle ears characterized by drainage, polyps, and severe ear disease such as Meniere's disease. After the court had decided that Mr. Miller qualified for the maximum 10% rating for chronic otitis media, it decided to voluntarily determine whether Mr. Miller should be referred to an extra scheduler rating above and beyond the 10% rating for chronic otitis media based on his symptoms as compared to the rating schedule. Counsel, as you know, we cannot entertain an appeal that's factual in nature. What's the legal question you're asking us to review? Yes, Your Honor. This court has jurisdiction under two points. The BVA and the Veterans Court violated this court's precedence in Roberson and Comer. And the fact that Mr. Miller had presented evidence of a physical disability, chronic otitis media, he had sought the highest rating available, which the court granted at 10%, and he presented evidence of unemployability, those facts are undisputed. And this court, as a matter of law, can determine under 38 CFR 1.16 whether to vacate the Veterans Court's decision and remand this case to that court and the board to determine whether to grant Mr. Miller's TDIU request. So how did the Veterans Court violate Roberson? In Roberson, Roberson held that once a veteran submits evidence of a physical disability, he seeks the highest rating available for that disability and submits evidence of unemployment, which Mr. Miller did in all three instances. He submitted evidence of his chronic otitis media, which the VA granted back to January 94. He sought the highest rating available, which the BVA granted at 10%, and he submitted evidence of unemployability with his Social Security Administration decision. Now, Mr. Miller was not submitting the SSA decision to require the VA to follow the SSA's regulations. He was merely submitting that decision to show unemployment from the period of May 99 to April 01. So under Roberson, as long as those three points are met, the VA must, MUST, determine whether a TDIU claim should be granted. In Comer, this court held that a TDIU claim could even be requested at the board, which happened in this case. It happened at the very last moment possible at the board, but it happened in his motion for reconsideration to the board. So it was still within the VA's jurisdiction. And so therefore, by the BVA denying his motion for reconsideration and not providing any explanation whatsoever, merely providing a conclusory statement that the evidence was there, the BVA considered it, denied. The Veterans Court also erred because it affirmed the BVA under very similar, it just basically quoted the BVA in a conclusory manner, stated that the BVA was correct based on the evidence before it. There was no explanation, there was no discussion or explanation whatsoever of why those three points were not met. Why did Mr. Miller not provide evidence of chronic otitis media? The second prong is this court also has jurisdiction over this case because those three facts are undisputed. Nowhere in the government's brief do they dispute that those three facts are presented. So therefore, this court, as a matter of law, can determine under 38 CFR 1.16 as to whether this case should be remanded to the Veterans Court and the VA to decide Mr. Miller's TDIU claim. Does that answer your question, Your Honor? I think so, but I thought I saw that the Veterans Court and the Board both together recognized after reviewing the evidence that certainly Mr. Miller had some hearing problems, but it didn't rise to the level of being a marked interference with his ability to work. Isn't that a fair characterization of what the Board and Veterans Court did below? No, Your Honor, because Mr. Miller was unemployed and the Social Security Administration determined that it was due to Meniere's disease. I'm just trying to understand what it was that the Board and Veterans Court said. I think that's what they said. That's what they said. Right. So they made a fact finding that upon review of the evidence, they found that yes, there was some hearing difficulties, but not so much that it rose to the level of being a marked interference with Mr. Miller's ability to work. To that point, the Veterans Court and the BVA was correct until Mr. Miller filed his motion for reconsideration requesting a TDIU claim for chronic otitis media. And that's pretty much it in a nutshell. There's discussion in the government's brief as to whether, well, I'll let them explain their position and I'll reserve the remainder of my time for rebuttal. Thank you. Mr. Corcoran. I'm sorry, Mr. Sweet. Oh, yes. Sorry, Mr. Sweet. May it please the Court. There was no violation of Roberson here. Roberson merely requires the Department of Veterans Affairs to sui sponte, consider a TDIU claim, or by extension, an extra schedule rating. The Department of Veterans Affairs did that here. Even though Mr. Miller did not request an extra schedule rating, and in fact indicated that he was not seeking a higher rating, the Board nevertheless considered an extra schedule rating. Now, while it ultimately found that he wasn't entitled to one, that's an issue of application of law to fact. For Roberson purposes, they satisfied their obligations by considering it. And regarding a TDIU claim, the Department of Veterans Affairs also considered a TDIU claim, culminating in the 2004 R.O. decision. Mr. Miller never appealed that decision, and thus it's final. But for Roberson purposes, the important factor is that it actually considered the claim. Moreover, as this Court has suggested, the standard for TDIU, which is inability to secure a substantially gainful employment, is substantially higher than that for extra schedule rating, which only requires market interference with employability. Thus, the finding that the Otitis media did not markedly interfere with his employability necessarily means that it did not prevent him from securing substantially gainful employment. Mr. Miller relies heavily on the Social Security Administration decision, but that only establishes that he was disabled since 1999 due to his Munier's disease, not to his Otitis media. Mr. Miller already has a 100% disability rating for his Munier's disease, and the 2004 decision made that determination based in part on that Social Security Administration decision. Mr. Miller's problem regarding his Munier's disease is not the rating for that disease, but rather the effective date. Because the effective date is 2001, Mr. Miller is not entitled to his 100% disability rating for Munier's disease before that date. And this Court can't reconsider that effective date at this point because Mr. Miller never filed an appeal with his 2004 RO decision, which assigns that effective date. So at this point, what Mr. Miller still has the option of doing and what he in fact needs to do is to go back to the Department of Veterans Affairs and file a Q claim with the 2004 RO decision assigning the effective date for Munier's disease. Because that's really what he's seeking to challenge here. Since he's relying on that Social Security Administration decision, he's really seeking his 100% rating for Munier's disease for that period from 1999 to 2001. And he still has a mechanism by which he can seek that, which is the Q claim. So he should avail himself of that instead of trying to seek an earlier effective date really for the first time. So you can get an earlier effective date for your disability benefits behind your actual claim filing date? How does that work? I thought the statute said your earliest award date would be your claim date. Correct. And that's the reason that the 2004 decision assigned the 01 date is because that was the date he filed his Munier's disease claim. So how can there be a Q claim, just curious, under the circumstances where you could go behind the 2001 date? It is a weak claim, Your Honor, but he tries to argue here that his Munier's disease is in fact the same disability as his otitis media, such that his 94 claim for otitis media included a claim for Munier's disease. So theoretically it's possible then? If his 94 claim had included a claim for Munier's disease, then that would be a basis, but he wasn't diagnosed with Munier's disease until 99. What if it was painfully obvious from the 94 claim that it was also, all the evidence was there for Munier's disease as well? Then that would be a basis for a Q claim at this point, but again, he wasn't diagnosed until 99. His real better argument is not to try and argue that they're the same disease here to justify raising it at this late date, but to claim that his 99 diagnosis was an informal claim. I'm just confused how you could get a date that's sort of in the middle between two claim dates, right? It seems like it would either have to be April 18, 2001 or 1994. Well, if he had filed a claim for Munier's disease in 94, then the statute's written as either one. If he filed his claim in 94 but wasn't diagnosed until 99, then the diagnosis date would govern, because the statute says, whichever is later, the onset of the disease or the filing of the claim. So if there had been a claim in 94 for Munier's disease, he could get a 99 rating date. But again, there was no claim in 94, and there couldn't have been because he hadn't been diagnosed yet. There's no claim in 94. How is it that he has a viable Q claim at this point? Again, I don't think he does, but the argument he tries to raise here should be raised. He said several times that he did have a Q claim outstanding. He should go ahead and pursue that. That's his option. I'm not saying that that's a substantively viable claim, but that's the procedural option to try and raise that claim. If there's a circumstance where, on the face of a Veterans Court decision, we see absolutely no findings, a real gap in the opinion in its analysis and arriving at a conclusion to deny disability benefits, would it be our role then to vacate that decision and remand this case to go back so that they can actually supply the fact findings that are necessary? I'm sorry. Did you say in the Veterans Courts decision? Yeah. Your Honor, then we'd have to look at the board decision to make sure that there was no analysis in there. Because if the board provides the analysis, then any shortcoming in the Veterans Courts decision is harmless error. But if neither had provided analysis, then yes, that would be a basis. If Your Honors have no further questions, then we respectfully request that this court dismiss for lack of jurisdiction to the extent, or the alternative of affirming the Veterans Court. Thank you. Thank you. Okay. Okay. First of all, Mr. Miller did not request a TDIU claim for Meniere's disease. He requested a TDIU claim for chronic otitis media. And the reasoning for that is because in the board's decision, it stated that there was no marked evidence of unemployability, when clearly there was. There's an issue of whether Mr. Miller is arguing for a Meniere's disease finding versus a chronic otitis media finding. But clearly, Mr. Miller had requested a TDIU for chronic otitis media. Now, throughout the record, there's discussion of whether Meniere's disease is caused by chronic otitis media. But under the benefit of the doubt, reasonable doubt doctrine, it's clear that when evidence is equally weighed, that for and against the veteran, the veteran wins. Tie goes to the veteran. And that is clearly in this case. And not only that, the... What is it that's in aqueous here, the evidence, or what is it that's in aqueous? Well, the wording of, for example, in Dr. Benghazi's report, he says that it's not clear as to whether chronic... Well, what he says is exactly. He says... At A1062, he says that Meniere's disease is at least as likely as not related to chronic otitis media as well as, which I interpret as in addition to, hearing loss and tinnitus. Now, there's a lot of discussion that that's been reinterpreted that it's unclear as to whether Meniere's disease is caused by chronic otitis media. But throughout the rest of the record, for example, at A2223, in the board's decision, it even bases its decision on a 10% rating of a showing of chronic middle ear disease. At A838, in the April 10, 2006, VA statement of the case, the VA says veterans condition is directly related to otitis media while in service and subsequently progressed over the years. At A955, for the January 5, January 305, DRO's decision, he says it's apparent that veterans condition related to chronic otitis media while in service and substantially progressed. As chronic otitis media occurred in service and substantially progressed. So that ties back to at least the January 94 claim, which Mr. Miller is tying his TDIU request to. And are you saying that this evidence was not considered below? I don't know what they considered, Your Honor, because they didn't tell us. Which is a clear violation of 38 U.S.C. 7104 D1. 81062, doesn't Dr. Bigazzi also say, based on the medical records, it is difficult to state with certainty whether his Meniere's disease is directly related to his chronic otitis media? Yes, Your Honor, but going back to... That's his wrap-up sentence in his report, right? Yes, Your Honor, but throughout the rest of the record, I argue that there's enough evidence in the record to counter that. And under the benefit of the doubt doctrine, the tie goes to the veteran. Any questions? No. I think we have your argument. Thank you very much, counsel.